### In re W. H.

[481 A.2d 22]

No. 83-417

Present: Billings, C.J., Hill, Underwood, Peck and Gibson, JJ.

Opinion Filed July 13, 1984

*Helen V. Torino,* Franklin County State's Attorney, St. Albans, for Plaintiff-Appellee.

*John H. Hasen,* Vermont Legal Aid, Inc., Burlington, for Defendant-Appellant.

*Marshall and Marshall,* Swanton, for amicus curiae Franklin/Grand Isle Mental Health, Inc.

**Gibson, J.** This is an interlocutory appeal from an order of the District Court of Vermont, Unit No. 3, Franklin Circuit. The question arose in the context of a civil involuntary commitment proceeding. The issue framed for our review is as follows:

> May the District Court, after hearing, pursuant to 18 V.S.A. § 7614, D.C.C.R. 35 and 37, order that a proposed patient be physically taken into custody for purposes of obtaining a psychiatric evaluation in order to determine whether the proposed patient is a person "in need of treatment" under 18 V.S.A. § 7101(17)?

The parties have stipulated to the following factual background. An application for involuntary treatment was filed in district court by W. H.'s son and daughter. It included "current and relevant facts upon which the allegation of mental illness and need for treatment [was] based," 18 V.S.A. § 7612(d)(2), and a statement that W. H. "refused to submit to an examination by a licensed physician." § 7612(e)(2).

A hearing was held on the State's motion for a psychiatric examination at which both the State and W. H. were represented by counsel. After finding the existence of good cause, the court ordered W. H. to undergo an out-patient examination at a specified time and location. W. H. did not appear. A guardian ad litem was appointed and a further hearing was held. After the second hearing, the court again directed W. H. to submit to an examination. This time the order provided that should the proposed patient fail to appear she would be required to be evaluated at the Vermont State Hospital for no more than three days and then would be returned to her resi-

dence by law enforcement officials. She again did not appear. A third hearing was held, at which time the court, noting her absence from the hearing, ordered law enforcement officials, pursuant to subpoena, to take her into custody and transport her to the courtroom.

In W. H.'s presence, the trial judge again ordered her to submit to an examination and informed her that if she failed to do so, she would be taken physically to the Vermont State Hospital for such an evaluation. Upon her third failure to comply, the court issued an order directing the Franklin County Sheriff's Department to transport her to the hospital. The order has been stayed pending resolution of this appeal.

Confinement for compulsory psychological treatment is "a massive curtailment of liberty." *Humphrey* v. *Cady*, 405 U.S. 504, 509 (1972). Under 18 V.S.A. §§ 7616 and 7617, a person may be involuntarily committed only upon a finding, by clear and convincing evidence, that he or she "is suffering from mental illness and . . . that he [or she] poses a danger of harm to himself or others . . . ." 18 V.S.A. § 7101 (17). This heightened standard of proof has been imposed upon commitment proceedings not only because an individual stands to be deprived of his physical liberty but also because of the negative social consequences that may result. *Addington* v. *Texas*, 441 U.S. 418, 425–26 (1979). In recent years the courts have given increasingly serious scrutiny to procedures committing the mentally ill and retarded, see, e.g., *Parham* v. *J. R.*, 442 U.S. 584 (1979), to discharge and release from confinement, see, e.g., *O'Connor* v. *Donaldson*, 422 U.S. 563 (1975), to the right to be given and to refuse treatment, see, e.g., *Mills* v. *Rogers*, 457 U.S. 291 (1982), and to the right to personal security while undergoing care or treatment within the institutional setting, see, e.g., *Youngberg* v. *Romeo*, 457 U.S. 307 (1982).

The involuntary hospitalization considered here is for the limited purpose of conducting a psychiatric examination of W. H. as prescribed and required by 18 V.S.A. § 7614. The examination is a prelude to the commitment hearing conducted under §§ 7615–7619 and is intended to assist the court in determining whether a proposed patient is a "person in need of

treatment." 18 V.S.A. § 7101(17).* The trial court's order circumscribed the nature of the examination by limiting its duration to three working days and by providing that W. H. should be returned to her residence upon the completion of the evaluation.

■ We find it difficult, if not impossible, to say that such an involuntary stay at the state hospital, even though limited in scope, is not a significant intrusion upon W. H.'s constitutional right to personal liberty. "The injurious effect of commitment can be manifested in a very short time," indeed within the first few days of confinement. *In re Harris*, 98 Wash. 2d 276, 279, 654 P.2d 109, 111 (1982). Therefore, such a procedure must comply with procedural due process. See, e.g., *State ex. rel. Doe* v. *Madonna*, 295 N.W.2d 356, 364 (Minn. 1980) (precommitment hearing confinement must comport with procedural due process) ; *In re Harris, supra*, 98 Wash. 2d at 287, 654 P.2d at 113 (72-hour precommitment hearing detention must comply with both procedural and substantive due process).

■ 18 V.S.A. § 7617(c) requires a court to consider any alternatives to hospitalization that may be appropriate in an individual case before resorting to hospital commitment. Although a consideration of less restrictive alternatives is legislatively required only at the time a full commitment hearing is held, we hold that it is also required before an individual may be involuntarily transported to a hospital for a psychiatric examination.

The less-restrictive-alternative doctrine, although never ex-

---

* We note that the involuntary commitment statutes provide that "the court . . . shall authorize examination of the proposed patient by a psychiatrist . . . ." § 7614. They do not, however, provide a method of enforcement should the proposed patient refuse examination. *In re C. E. E.*, 139 Vt. 65, 67, 421 A.2d 1312, 1313 (1980).

In contrast, the emergency provisions authorize the custody and transportation of a proposed patient. §§ 7504–7505. Under those sections, a law enforcement officer or mental health professional is authorized to take the person into temporary custody and to transport him or her to a designated hospital if a physician certifies it is necessary or the court finds probable cause to believe the person "presents an immediate risk of serious injury." §§ 7504, 7505.

plicitly adopted by the United States Supreme Court, has been adopted by statute in many states. Note, *The Due Process of Community Treatment of the Mentally Ill: A Case Study,* 59 Tex. L. Rev. 1481, 1490 n.52 (1981). The doctrine has been adopted judicially in the civil commitment context, see, e.g., *Covington* v. *Harris,* 419 F.2d 617, 623 (D.C. Cir. 1969); *Dixon* v. *Attorney General,* 325 F. Supp. 966, 974 (M.D. Pa. 1971), and has been required in a strikingly similar situation by the Supreme Court of Washington.

In *In re Harris, supra,* the Washington involuntary commitment statute included a summons procedure whereby a person could be detained for a 72-hour period for evaluation and treatment prior to an involuntary commitment hearing. Detention was authorized in a nonemergency situation, and an individual could be forcibly apprehended if voluntary compliance did not result within 24 hours of the summons. *Id.* at 279, 654 P.2d at 110.

The court found that commitment for even 72 hours was a "massive curtailment of liberty," *id.* at 285, 654 P.2d at 114, and that the summons procedure was an unconstitutional deprivation of procedural due process. The court therefore required a finding of "probable dangerousness," sufficient investigation, and a consideration of less restrictive alternatives before a prehearing detention would be justified. *Id.* at 287, 654 P.2d at 115.

> The exhaustion of less restrictive alternatives to involuntary 72-hour detention is essential both to due process and to the integrity of our mental health system. The best interests of the mentally ill lie more often than not in treatment that does not involve commitment. Voluntary avenues must be explored before invoking the mandate of involuntary commitment. If commitment is always associated with force, those who need help may be diverted from seeking assistance.

*Id.* at 288, 654 P.2d at 115. See generally Chambers, *Alternatives to Civil Commitment of the Mentally Ill: Practical Guides and Constitutional Imperatives,* 70 Mich. L. Rev. 1107 (1972).

As noted in *Harris, supra,* voluntary alternatives must be considered first. The proposed patient should be encouraged

to submit to an out-patient examination by a psychiatrist of his or her choice. Failing that, an out-patient examination could be scheduled by the court with a physician located as near as possible to the proposed patient's home. Although the latter alternative was unsuccessfully attempted in the present case, we believe additional options still remain. Among other less restrictive alternatives are "outreach home-visit evaluations." Note, *The Due Process of Community Treatment of the Mentally Ill: A Case Study, supra,* 59 Tex. L. Rev. at 1494 n.71. Under this alternative, the proposed patient would be visited at home by a psychiatrist for evaluation. Although this method may not always be practicable or successful, see *id.* at 1495, it may be appropriate in some cases. Another alternative to be considered by the trial court is the possibility of admitting expert opinion evidence at the commitment hearing in the absence of a psychiatric report, pursuant to V.R.E. 703 and 18 V.S.A. § 7622(b). This procedure, if feasible in the particular case, would permit a psychiatrist to give opinion testimony based upon "facts or data . . . perceived by or made known to him at or before the hearing." 18 V.S.A. § 7622(b); V.R.E. 703.

By suggesting the above alternatives, we do not mean to imply that in no case may the court order forcible commitment for the purpose of examination; we simply do not reach that question. All existing alternatives have not yet been considered. The trial court should first consider these and any other feasible less-restrictive alternatives to the forcible detention it has ordered.

■ In light of the above discussion, we are unable to answer the question as certified because it is overbroad. We must thus rephrase it. "[U]nder V.R.A.P. 5(b) the statement of the controlling question of law . . . is for the aid of the Court and the parties in identifying the issues presented without limiting [our] consideration to the trial judge's view of the case. It is a landmark, not a boundary . . . ." *State* v. *Carpenter,* 138 Vt. 140, 146, 412 A.2d 285, 289 (1980). This Court will not hesitate to reach issues outside the scope of a certified question when necessity requires. *Id.;* see also *In re Fletcher,* 144 Vt. 419, 422, 479 A.2d 134, 135 (1984). So too, we will narrow the focus of such an inquiry when it appears

from the facts or the procedural posture of the case that the question reaches too far. We would rephrase the certified question as follows:

> May the District Court, after hearing, pursuant to 18 V.S.A. § 7614, D.C.C.R. 35 and 37, order that a proposed patient be physically taken into custody for purposes of obtaining a psychiatric evaluation in order to determine whether the proposed patient is a person "in need of treatment" under 18 V.S.A. § 7101(17) prior to considering all other feasible less-restrictive alternatives?

*The certified question, as rephrased, is answered in the negative.*