

# In re R. A.

[501 A.2d 743]

No. 84-503

Present: **Allen, C.J., Hill, Peck, Gibson and Hayes, JJ.**

Opinion Filed September 13, 1985

*J. Stephen Monahan*, Assistant Attorney General, Waterbury, for Plaintiff-Appellee.

*Anne S. Locke*, Vermont Legal Aid, Inc., Waterbury, for Defendant-Appellant.

**Allen, C.J.** This case is an appeal from an order of the District Court, Waterbury Circuit, finding R. A. to be a patient in need of further treatment, 18 V.S.A. § 7101(16), and committing him to the Vermont State Hospital (VSH) for an indeterminate period. 18 V.S.A. § 7621(b).

R. A. is a victim of Huntington's Chorea, a hereditary neurological disease which causes organic brain damage to the frontal lobe, choreic (involuntary muscle) movements, muscle tone weakness and contractual spasms, personality changes, hallucinations, delusions, difficulty in swallowing and walking, depression, and death. R. A.'s life expectancy is four to five years.

R. A. was admitted to VSH as a voluntary patient, agreeing pursuant to 18 V.S.A. § 8010(a) to give advance notice of his intention to leave. A month later he gave such notice, and the Department of Mental Health filed an application for involuntary treatment pursuant to 18 V.S.A. § 7612. He was subsequently committed to VSH for a period of ninety days, during which time the Department filed an application for continued treatment. A hearing on the application was held on May 10, 1984, during which testimony was given concerning R. A.'s inability to care for himself, his treatment at VSH, and the availability of alternatives to hospitalization. The court subsequently issued findings and conclusions, and ordered R. A. to be hospitalized at VSH for an indeterminate period.

R. A.'s appeal centers around two statutory prerequisites to involuntary hospitalization. The first, found at 18 V.S.A. § 7617(e), requires "treatment which is adequate and appropriate to [the person's] condition." Although § 7617 concerns initial orders of hospitalization, and the hearing at issue here was for continued hospitalization pursuant to § 7621, a finding under § 7621(b) that a patient "requires hospitalization" necessarily requires consideration of the § 7617 prerequisites.

R. A. contends first that the court's consideration of available alternatives was less than thorough, due to an erroneous finding that R. A. was ineligible for placement in programs for the developmentally disabled. The court found that R. A. was ineligible for the programs because he was not mentally retarded.

"Developmental disability" is defined for purposes of eligibility for such programs in the Developmental Disabilities Assistance and Bill of Rights Act, at 42 U.S.C. § 6001(7).* A mental health

---

* That definition is as follows:

The term "developmental disability" means a severe, chronic disability of a person which—

(A) is attributable to a mental or physical impairment or combination of mental and physical impairments;

(B) is manifested before the person attains age twenty-two;

worker, testifying for the State, testified that, "[b]ecause [R. A.] is not deemed mentally retarded or developmentally disabled . . . [he is] ineligible for placement in group homes funded by the Department of Mental Health." Upon being shown the statutory definition of "developmental disability," however, she conceded that R. A. did, in fact, meet that definition. She was then asked, "if he were determined by the State of Vermont to be developmentally disabled, that would open up a whole additional range of possible residential placements that's not been explored. Is that correct?" The witness replied, "Yes, that is."

■ Findings of fact will be reversed only upon a showing that they are clearly erroneous. *Page* v. *Suraci*, 145 Vt. 89, 92, 483 A.2d 601, 603 (1984). Once the State's witness agreed that R. A. was, in fact, developmentally disabled, there was no basis for any contrary finding. Furthermore, there was no evidence from which the court could have concluded that mental retardation was a prerequisite to a determination that R. A. was developmentally disabled.

The State argues that the court's finding on the issue, if error, was harmless error because the Developmental Disabilities Act does not provide any substantive rights. This misapprehends R. A.'s argument. R. A. does not contend that the federal law has been violated. Rather, had the court correctly determined that R. A. was eligible for placement in programs funded pursuant to the Act, it would have broadened its consideration of alternatives to hospitalization, pursuant to 18 V.S.A. § 7617(c). Failure to have done so is fatal to the court's hospitalization order.

■ The hospitalization order was also challenged on the ground that the court's finding that R. A. was receiving adequate and appropriate treatment was clearly erroneous. The State claims that R. A.'s treatment meets the constitutionally mandated minimum rights to treatment, at least for the mentally retarded, as set forth in *Youngberg* v. *Romeo*, 457 U.S. 307 (1982).

---

(C) is likely to continue indefinitely;

(D) results in substantial functional limitations in three or more of the following areas of major life activity: (i) self-care, (ii) receptive and expressive language, (iii) learning, (iv) mobility, (v) self-direction, (vi) capacity for independent living, and (vii) economic self-sufficiency; and

(E) reflects the person's need for a combination and sequence of special, interdisciplinary, or generic care, treatment, or other services which are of lifelong or extended duration and are individually planned and coordinated.

The issue, however, is not whether the constitutional minimum has been met, but whether the statutory mandate of "treatment which is adequate and appropriate to [the person's] condition" has been met. This mandate may require something more than the "reasonable care and safety, reasonably nonrestrictive confinement conditions, and such training as may be required by these interests" which the Fourteenth Amendment requires. *Youngberg, supra*, 457 U.S. at 324.

Upon remand, the trial court shall examine R. A.'s current treatment to ensure that it presently complies with the statutory requirements.

*Reversed and remanded.*