■

### In re M.D.

[655 A.2d 723]

No. 94-016

Present: **Allen, C.J., Dooley, Morse and Johnson, JJ., and Maloney, Supr. J., Specially Assigned**

Opinion Filed December 30, 1994

*Christopher C. Moll*, Windham County Deputy State's Attorney, Brattleboro, for Plaintiff-Appellee.

*Geoffrey F. Walsh*, Vermont Legal Aid, Inc., Springfield, for Defendant-Appellant.

**Johnson, J.** We hold today that the Commissioner of Mental Health and Mental Retardation has authority to transfer patients in the care and custody of the State, whether as voluntary or involuntary patients, under the Interstate Compact on Mental Health, 18 V.S.A. §§ 9001-9052 (Compact). Because the family court erred in its interpretation of the Compact, we reverse its order involuntarily committing M.D., a nonresident patient who was denied a transfer as a voluntary patient.

In June 1993, after her therapist diagnosed her as possibly suffering from multiple personality disorder, M.D., a life-long resident of Connecticut, voluntarily enrolled in an in-patient psychiatric treatment program at the Brattleboro Retreat. In July, she was released to out-patient care and returned to Connecticut. After an attempted suicide, she returned to the Retreat in August and admitted herself as a voluntary patient. The Retreat staff diagnosed M.D. as suffering from a multiple personality disorder, post-traumatic stress disorder, and borderline personality disorder. Treating physicians considered her a high risk for repeated suicide attempts.

M.D. paid for her treatment at the Retreat through private insurance coverage. When her coverage was about to expire, the Retreat filed an involuntary treatment petition in the Windham Family Court. The petition was joined by the State. Without funding, the Retreat would be forced to release her even though all parties agreed that M.D. was in need of further treatment. M.D. sought to dismiss the involuntary treatment proceedings, but only because she was willing to continue her treatment voluntarily at either the Retreat, or at a hospital in Connecticut.

M.D.'s ultimate goal, and that of the Commissioner, was to transfer M.D. to a facility in her home state of Connecticut. M.D. and the Commissioner differed, however, about whether it was necessary for M.D. to become an involuntary patient before she could be transferred to a Connecticut hospital pursuant to the Compact. The Commissioner determined that he was not in a position to implement a transfer without an order of hospitalization, and that he had no authority to transfer M.D. as a private patient of the Retreat.

The family court agreed with the Commissioner that to effect the transfer, M.D. had to be involuntarily committed. The court concluded that voluntary treatment was not possible, at least not at the Retreat, apparently because the Retreat maintained it would be forced to release M.D. without payment or a commitment order. The court made no findings on whether voluntary treatment was available for M.D. as a state patient, and the record is unclear on whether the State would have accepted M.D. as a voluntary patient. The court granted the application for involuntary treatment and gave the Commissioner of Mental Health and Mental Retardation custody of M.D. for a period not to exceed ninety days for hospitalization and treatment at the Retreat. M.D. remained at the Retreat, subject to the involuntary treatment order, until she was released two months later. After her release, she returned to Connecticut and continued out-patient treatment without further hospitalization.

M.D. appeals the family court's involuntary treatment order.* She argues that (1) the family court violated the Mental Health Act, 18 V.S.A. §§ 7101-9317, by ordering involuntary treatment when voluntary treatment was possible, and (2) the family court erred as a matter of law in determining that only patients subject to an involuntary treatment order may be transferred by means of the Compact. The Commissioner maintains that voluntary treatment was not possible because only involuntary patients may be transferred under the Compact.

The crucial issue in this case is whether the Commissioner had the authority to transfer M.D. to another facility without a commitment order. Any transfer of a nonresident patient to an out-of-state facility is governed by the Compact. 18 V.S.A. § 7902. The purpose of the Compact is "to provide the necessary legal basis for the institutionalization or other appropriate care and treatment of the mentally ill and mentally retarded under a system that recognizes the paramount importance of patient welfare." *Id.* § 9001. The Compact administrator for each state is responsible for coordinating any transfers to or from that state. *Id.* § 9010. In Vermont, the Commissioner is the designated Compact administrator. *Id.* § 9051.

The Compact does not distinguish between voluntary and involuntary patients in the care and custody of the state in authorizing a transfer between states. The transfer provision of the Compact states:

> The duly accredited officers of any state party to this compact, upon the establishment of their authority and the identity of the patient, shall be permitted to transport any patient being moved pursuant to this compact through any and all states party to this compact, without interference.

*Id.* § 9006. This provision contains no language indicating that a patient must be involuntary to be transferred. The transfer provision's only requirement is that a state must establish its authority over the patient. We conclude that the state can satisfy this requirement for any patient in the care and custody of the state.

In Vermont, patients in the care and custody of the state may be either voluntary or involuntary. The statute indicates a strong

---

* Although M.D. has been discharged, her case is not moot because of the stigma associated with involuntary commitment cases. *State v. Condrick*, 144 Vt. 362, 364, 477 A.2d 632, 633 (1984).

preference for voluntary treatment whenever feasible. *Id.* § 7703(a) ("Involuntary treatment shall be utilized only if voluntary treatment is not possible."); 1977, No. 252 (Adj. Sess.), § 1 ("Treatment on a voluntary basis shall be preferred to involuntary treatment and in every case, the least restrictive conditions consistent with adequate treatment shall be provided."). Voluntary state patients may be admitted according to the procedures outlined in § 7503. Involuntary treatment requires a judicial procedure outlined in §§ 7611-7623. Furthermore, state patients may be hospitalized in either the Vermont State Hospital or the Retreat. 18 V.S.A. § 7401(5) (the Commissioner may "supervise the care and treatment of patients at the Retreat in the same manner and with the same authority that he supervises patients at the Vermont State Hospital").

As a practical matter, the level of administrative control over a voluntary patient is not less significant than control over involuntary patients. Upon admission, a voluntary patient must sign a consent form stating that the patient understands that the treatment will involve inpatient status. 18 V.S.A. § 7503(b). "A person admitted to a hospital shall be subject to the control and treatment of the head of the hospital and the board until his condition warrants his release, or until he has been lawfully removed or otherwise discharged." *Id.* § 7502. A voluntary patient may not leave at will. The patient must give written notice to the head of the hospital. *Id.* § 8010(a). If the patient agreed at the time of admission that release could be delayed, the head of the hospital, upon a determination that the patient is a patient in need of further treatment, has four days to file involuntary commitment proceedings. *Id.* § 8010(b). During these proceedings, the patient remains in the hospital. *Id.* Accordingly, both voluntary and involuntary patients are in the State's custody and cannot leave the hospital at will.

▮ Thus, for purposes of transfer under the Compact, all the Commissioner had to do was admit M.D. as a voluntary state patient while the transfer details were being worked out with the receiving facility in Connecticut. Committing M.D. involuntarily to do exactly the same thing was wholly unnecessary because M.D. was not asserting a right to leave the hospital.

Although the difference in status may not have been significant for the Commissioner, it was of great significance to M.D. It is beyond dispute that involuntary commitment proceedings can result in negative social consequences. See *In re W.H.,* 144 Vt. 595, 597, 481 A.2d 22, 24 (1984) (negative social consequences may result from

involuntary commitment proceedings); *State v. Condrick*, 144 Vt. 362, 364, 477 A.2d 632, 633 (1984) (collateral consequences of being found mentally ill include legal disabilities and social stigmatization). On the other hand, the decision to seek professional help voluntarily demonstrates recognition of the problem, an important first step to recovery. See *O'Connor v. Donaldson*, 422 U.S. 563, 579 (1975) (Burger, C.J., concurring) ("[T]he first step in effective treatment is acknowledgment by the patient that he is suffering from an abnormal condition."); *In re Splett*, 572 N.E.2d 883, 887 (Ill. 1991) ("[A] patient who voluntarily undertakes therapy is more likely to be rehabilitated than one who is involuntarily required to undergo treatment."). Furthermore, the preference for voluntary treatment encourages people who need professional help to seek assistance. See *In re W.H.*, 144 Vt. at 599, 481 A.2d at 25 ("'Voluntary avenues must be explored before invoking the mandate of involuntary commitment. If commitment is always associated with force, those who need help may be diverted from seeking assistance.'") (quoting *In re Harris*, 654 P.2d 109, 115 (Wash. 1982)).

The policies of both Vermont's Mental Health Act and the Compact are entirely consistent with this preference for recognizing the importance of a patient's therapeutic status as a voluntary patient. See 1977, No. 252 (Adj. Sess.), § 1 (amendment to Mental Health Act indicating that Vermont's policy is to prefer voluntary treatment); 18 V.S.A. § 9001 (Compact "recognizes the paramount importance of patient welfare"). We hold that the Commissioner may, in his discretion, transfer any patient in state custody under the Compact, whether the patient's status is voluntary or involuntary. Because the family court erroneously interpreted the Compact, it failed to consider adequately whether M.D. could continue as a voluntary state patient. See 18 V.S.A. § 7617(c) ("The court shall not order hospitalization without a thorough consideration of available alternatives.").

*Reversed.*