# In re R.L.

[657 A.2d 180]

No. 93-051

Present: Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.

Opinion Filed January 13, 1995

*Jeffrey L. Amestoy*, Attorney General, Montpelier, and *Janet Bull*, Assistant Attorney General, Waterbury, for Appellee Vermont Department of Mental Health and Mental Retardation.

*Alexander Scherr* and *Bessie A. Weiss* and *Louise M. Pierson*, Paralegals (On the Brief), Vermont Legal Aid, Inc., Waterbury, and *Jeffrey A. Meyer* of *Kellogg, Huber, Hansen & Todd*, Washington, D.C., for Appellant R.L.

*M. Jerome Diamond*, Montpelier, for amici curiae American Civil Liberties Union (Vermont Chapter), Vermont Advocacy Network, Vermont Developmental Disabilities Council, and Vermont Protection and Advocacy, Inc.

**Gibson, J.** R.L. appeals the family court's involuntary hospitalization order and its denial of his request for an order directing the Vermont State Hospital (VSH) to accept him as a voluntary patient. R.L. claims that 18 V.S.A. § 7703(a) authorizes involuntary treatment only where voluntary treatment is "not possible," and that, in his case, the State failed to show that voluntary treatment was not possible. The family court denied R.L.'s request because it concluded that R.L. was required to exhaust the grievance procedures available at VSH prior to seeking judicial review of his request for voluntary admission. Although we conclude that the family court erred by invoking the exhaustion doctrine, we affirm on other grounds.

R.L. was admitted to VSH for emergency examination on August 10, 1992. After the State filed its petition for involuntary treatment,

and prior to the commitment hearing, R.L.'s counsel proposed a settlement, requesting that VSH admit R.L. as a voluntary patient. Counsel for the State referred the matter to the hospital treatment team. The hospital treatment team felt that R.L. was not an appropriate person for admission as a voluntary patient, and denied the request. At the commitment hearing on August 21, 1992, R.L. asked the court through counsel to order VSH to admit him as a voluntary patient. The court declined to do so. It concluded that VSH had discretion to accept patients for voluntary treatment, and found no abuse of discretion by VSH in denying R.L. voluntary admission. The court also found that R.L. was a person in need of treatment and ordered him committed to VSH.[1] R.L. thereafter moved for reconsideration of his request for voluntary treatment. The court denied the motion, reasoning that R.L. was required to exhaust his administrative remedies before judicial review of the hospital's decision was available. This appeal followed.

## I.

We first address the family court's ruling that the exhaustion doctrine prevented it from reviewing the hospital's refusal to admit R.L. as a voluntary patient. Requests for voluntary admission to VSH must be directed to the hospital, and must include the written consent of the applicant. 18 V.S.A. § 7503(a), (b). Admission on an involuntary basis for emergency examination does not preclude application for voluntary status. See *id.* § 7508(d)(1) (patient admitted pursuant to emergency examination must be released within seventy-two hours unless, within that period, patient has been accepted for voluntary admission). Even after involuntary commitment pursuant to court order, a patient may request a transfer to voluntary status. *Id.* § 7709 ("*At any time*, a patient may, with the permission of the head of the hospital, have his status changed from involuntary to voluntary . . . .") (emphasis added).

A patient who is denied voluntary status by the treatment team may request review of the decision by the Chief Executive Officer (CEO) of the hospital, and if not satisfied by the CEO's decision, the patient may appeal to the Commissioner of Mental Health and Mental Retardation. See Vermont State Hospital, Policy and Procedure

---

[1] R.L. does not challenge the court's finding that he was in need of treatment at the time of his emergency examination or at the time of the commitment hearing. See 18 V.S.A. § 7617(b).

Manual F-8 (rev. Jan. 1993). The manual provides criteria for evaluating a patient's suitability for conditional voluntary status. *Id.* F-10. A patient has a right to representation and to present argument to the CEO, or to any independent fact-finder appointed by the CEO. *Id.* F-8. The decision of the CEO must be in writing within a reasonable time, and this decision is appealable to the Commissioner, who must also rule within a reasonable time. *Id.*

■ ■ The family court concluded that it was prohibited from reviewing the hospital's denial of R.L.'s request for voluntary admission because R.L. had not exhausted the hospital's grievance procedures. As a general rule, where an agency has jurisdiction to decide an issue, a court will not interfere with the agency's decision unless and until all administrative remedies have been invoked or exhausted. See *Morean-Usher v. Town of Whitingham*, 158 Vt. 378, 381, 610 A.2d 1108, 1110 (1992). After the agency renders its decision, the court generally has the authority to review the decision:

> The agency has jurisdiction over the matter and the court only monitors the agency's decisions. The court's jurisdiction stems completely from the agency's jurisdiction and the court's role in that particular administrative program. The role may be extremely limited according to the prescribed standard for review; indeed the court may be given no function in the particular administrative program where the action is unreviewable.

2 C. Koch, Administrative Law & Practice § 10.26 (1985). Under the exhaustion doctrine, the reviewing court's jurisdiction over the agency decision is appellate in nature. By invoking the exhaustion doctrine in the present case, the family court assumed, incorrectly, that it had appellate jurisdiction to review the actions of the Commissioner of Mental Health and Mental Retardation.

■ Section 454 of Title 4 grants the family court exclusive jurisdiction over a number of proceedings, including mental health proceedings "filed pursuant to chapters 179, 181 and 185 of Title 18." See 4 V.S.A. § 454. It is a court of limited jurisdiction, and its jurisdictional grant must be strictly construed. See *Allen v. Allen*, 161 Vt. 526, 530, 641 A.2d 1332, 1335 (1994) (Dooley, J., concurring); cf. *In re M.C.P.*, 153 Vt. 275, 302, 571 A.2d 627, 642 (1989) (juvenile court exercises limited statutory powers and does not have authority to employ particular procedure absent statutory authorization); *In re V.C.*, 146 Vt. 454, 457, 505 A.2d 1214, 1217 (1985) (court may order

commissioner of mental health to provide adequate treatment to mentally ill but it has no authority to order commissioner to place VSH patient in out-of-state facility; specific means of complying with law requiring adequate treatment are within commissioner's special expertise). Although the court has "all of the equitable and other powers of the superior court as to civil matters within its jurisdiction," 4 V.S.A. § 453(a), the jurisdictional grant does not specify any general appellate jurisdiction. Thus, the family court's jurisdiction is markedly different from that of the superior court, which has "appellate jurisdiction of causes, civil and criminal, appealable to the court." 4 V.S.A. § 113. The family court's only appellate jurisdiction authorized by statute is over decisions from the family court magistrate. 4 V.S.A. § 465.

■■  Further, Title 18 does not provide for appeals to the family court from any administrative decision regarding mentally ill patients. There are, however, routes of appeal to the superior court from any decision of the board of mental health, 18 V.S.A. § 7112, and for any decision of the commissioner "relating to the charge for the care and treatment of a patient." 18 V.S.A. § 8111; see also *id.* § 8837 (superior court has jurisdiction to enforce §§ 8835 and 8836 after exhausting administrative remedies). We conclude that the family court lacks appellate jurisdiction to review administrative decisions and therefore erred by invoking the doctrine of exhaustion in the present case.

## II.

■■  The family court was correct, however, in examining the possibility of voluntary treatment for R.L. prior to its decision on reconsideration. Although a person seeking treatment at VSH on a voluntary basis must direct a written request to the hospital, 18 V.S.A. § 7503(a), (b), § 7703(a) provides that involuntary treatment "shall be utilized *only if* voluntary treatment is not possible." (Emphasis added.) The family court may enter an involuntary treatment order if it finds that, at the time of the petition and the hearing, the proposed patient suffers from a mental illness and, as a result of that illness, poses a danger of harm to himself or others. 18 V.S.A. §§ 7617(b) & 7101(17). The State must prove that involuntary treatment is necessary by clear and convincing evidence. 18 V.S.A. § 7616(b). Prior to ordering any course of involuntary treatment, the family court must examine appropriate alternatives to ensure that the

patient receives treatment in the least restrictive manner. *Id.* § 7617(c). In this case, R.L. sought commitment as a voluntary patient. Failure by the court to consider alternatives fairly presented by the record renders an involuntary hospitalization order invalid. *In re R.A.*, 146 Vt. 289, 291, 501 A.2d 743, 744 (1985).

We have applied § 7617(c)'s least-restrictive-alternative requirement to involuntary psychiatric examination orders pursuant to 18 V.S.A. § 7614. See *In re W.H.*, 144 Vt. 595, 598, 481 A.2d 22, 25 (1984). In so doing, we require the court to examine voluntary alternatives first before resorting to an involuntary order. *Id.* at 599, 481 A.2d at 25. We recognize that involuntary treatment for mental illness is "'a massive curtailment of liberty,'" often resulting in social stigmatization. *Id.* at 597, 481 A.2d at 24 (quoting *Humphrey v. Cady*, 405 U.S. 504, 509 (1972)); see also *In re M.D.*, 163 Vt. 130, 134, 655 A.2d 723, 725 (1994) (difference in status is of "great significance" to patient; involuntary commitment proceedings can result in negative social consequences). Additionally, we have noted that "'[t]he best interests of the mentally ill lie more often than not in treatment that does not involve commitment. Voluntary avenues must be explored before invoking the mandate of involuntary commitment. If commitment is always associated with force, those who need help may be diverted from seeking assistance.'" *In re W.H.*, 144 Vt. at 599, 481 A.2d at 25 (quoting *In re Harris*, 654 P.2d 109, 115 (Wash. 1982)).

■ The reasoning that grounded our decision in *W.H.* applies with equal force to civil commitment proceedings pursuant to § 7617. Indeed, the Legislature has mandated that involuntary treatment be a last resort; the State is prohibited from using involuntary treatment where voluntary treatment is possible. See 18 V.S.A. § 7703(a); see also 1977, No. 252 (Adj. Sess.), § 1 (setting forth state policy: "Treatment on a voluntary basis shall be preferred to involuntary treatment and in every case, the least restrictive conditions consistent with adequate treatment shall be provided."). The family court's oversight role under Title 18 requires it to ensure that the State follow this legislative mandate. Cf. *In re Harris*, 654 P.2d at 115 ("The potential curtailment of liberty requires the intervention of an impartial third party to ensure . . . that sufficient investigation has occurred, and that commitment is the least restrictive alternative. These are uniquely judicial concerns that will ensure the system is not abused."). The family court must make certain that a patient is not subject to an involuntary treatment order in those cases where voluntary treatment is feasible.

■ Therefore, we hold that once the patient puts in issue his request for voluntary treatment, whether as a residential or as a nonresidential patient, the State must show by clear and convincing evidence that voluntary treatment is not feasible before the family court may enter an order for involuntary treatment. Cf. *In re Commitment of an Alleged Mentally Disordered Person*, 699 P.2d 1312, 1313 (Ariz. Ct. App. 1985) (requiring involuntary treatment only where patient unwilling or unable to accept treatment voluntarily is justified by medical efficacy of voluntary treatment and constitutional concerns that arise when state compulsion not shown to be necessary); *In re Chorney*, 825 P.2d 330, 335 (Wash. Ct. App. 1992) (where patient has put in issue voluntary treatment, state must show that patient has not in good faith volunteered for treatment before court may order involuntary treatment). The State must carry this burden because it is the State that "'must ultimately justify depriving a person of a protected liberty interest by determining that good cause exists for the deprivation.'" *In re G.K.*, 147 Vt. 174, 178, 514 A.2d 1031, 1033 (1986) (quoting *Doe v. Gallinot*, 657 F.2d 1017, 1023 (9th Cir. 1981)).

■ We emphasize that the State's burden to show that voluntary treatment is not feasible arises only after the proposed patient raises that issue. Cf. *In re Chorney*, 825 P.2d at 335 (patient must first put good faith voluntary status in issue before state must prove patient not a good faith voluntary patient). Among the factors the court may consider are the patient's capacity to consent to voluntary treatment, the impact voluntary treatment may have on the patient's treatment plan, and whether the patient would, in fact, accept voluntary treatment. See, e.g., *In re Alleged Mentally Disordered Person*, 699 P.2d at 1313 (state must show clearly and convincingly that patient is unwilling or unable to accept voluntary treatment); *In re Chorney*, 825 P.2d at 335 (to qualify for voluntary status, proposed patient must not only express willingness to follow procedures and treatment plan, but must also have track record demonstrating that willingness).

In the present case, we uphold the involuntary hospitalization order because the State sustained its burden to show that voluntary treatment of R.L. was not possible.[2] The State's primary witness was Dr. Munson, who was treating R.L. pending the court's decision and

---

[2] Because we conclude that the family court properly rejected R.L.'s request for voluntary treatment, we do not reach R.L.'s claim that the family court has authority to order VSH to admit a voluntary patient.

who had treated R.L. in the past. Dr. Munson testified that voluntary treatment would lead to instability and undermine R.L.'s treatment. He further testified that R.L. was too volatile and that he was not able to make a meaningful agreement to be a voluntary patient. In its findings, the court stated that R.L.'s mental illness was such that it grossly impaired his judgment and his thought processes, and that R.L. was incapable of making reasonable judgments. In addition, the court found that there was no evidence that R.L. would voluntarily accept community-based treatment and that there were no less-restrictive alternatives presently available to meet his needs. The court's findings were based on clear and convincing evidence.

Although the court's findings and conclusions did not specifically focus on whether voluntary treatment was possible, the record is clear that such treatment was not feasible. In addition to R.L.'s inability to make reasoned judgments, calling into question his capacity to submit to voluntary treatment, the success of R.L.'s treatment depended on an order for involuntary treatment. The findings and conclusions support the court's order for involuntary hospitalization.

*Affirmed.*