514 A.2d 1031 (1986)
In re G.K., W.M., and P.S.
No. 85-242.
Supreme Court of Vermont.
June 20, 1986.
O. Whitman Smith, Burlington, for plaintiffs-appellees.
Jeffrey L. Amestoy, Atty. Gen., Montpelier, and J. Stephen Monahan, Asst. Atty. Gen., Waterbury, for defendant-appellant.
Before ALLEN, C.J., and HILL, PECK, GIBSON and HAYES, JJ.
HILL, Justice.
This case asks us to review the constitutionality of involuntary treatment orders of indeterminate duration issued pursuant to 18 V.S.A. § 7621(c). The district court ruled that such orders, absent provision for state-initiated periodic review, violated the due process rights of persons subject thereto. The State appealed. We affirm.
The appellees in this case were initially found to be persons in need of treatment, see 18 V.S.A. § 7101(17), and committed to the Vermont State Hospital for a 90-day period. Each appellee was accorded a hearing at which the State bore the burden of establishing that he was "suffering from mental illness and, as a result of that mental illness, his capacity to exercise self-control, judgment, or discretion in the conduct of his affairs and social relations [was] so lessened that he pose[d] a danger of harm to himself or others...." 18 V.S.A. § 7101(17). Each appellee received notice of the hearing and counsel was appointed. See 18 V.S.A. § 7613. Moreover, the State was held to a clear and convincing standard of proof. 18 V.S.A. § 7616(b).
The constitutionality of this initial commitment process is beyond dispute. See Addington v. Texas, 441 U.S. 418, 427, 99 S.Ct. 1804, 1810, 60 L.Ed.2d 323 (1979) ("due process requires the state to justify confinement [as a finding of probable dangerousness to self or others] by proof more substantial then a mere preponderance of the evidence"). After the 90-day period expired, however, the Commissioner of Mental Health filed applications for continued treatment pursuant to 18 V.S.A. § 7620. Each appellee was found to be a patient in need of further treatment, see 18 *1032 V.S.A. § 7101(16), and placed under an order of nonhospitalization for an indeterminate period pursuant to 18 V.S.A. § 7621(c). Appellees reserved the right to contest the constitutionality of these orders, and subsequently petitioned the district court for a hearing on this matter.
The State concedes that orders of nonhospitalization implicate important liberty interests requiring due process protections. It contends, however, that there is a fundamental distinction between orders of commitment and orders of nonhospitalization, and urges us to incorporate this distinction into our due process analysis. We disagree with the State's contention, and hold that persons subject to nonhospitalization orders are entitled to the same due process protections as persons subject to commitment orders insofar as the right to periodic review of their mental health status is concerned.
When mentally ill persons are placed under orders of nonhospitalization, they are committed to the care and custody of the Commissioner of Mental Health. 18 V.S.A. § 7623. Such persons are typically ordered to remain in specialized residential treatment programs, and to take all medications prescribed by the treating psychiatrist. Thus, their right to unrestricted travel, and their right to be free from unwarranted intrusions of one's bodily integrity are clearly impinged upon.
The fundamental nature of these rights is beyond dispute. See, e.g., Jones v. Helms, 452 U.S. 412, 418, 101 S.Ct. 2434, 2439, 69 L.Ed.2d 118 (1981) ("Although the textual source of [the right to travel] has been the subject of debate, its fundamental nature has consistently been recognized by this Court."); Ingraham v. Wright, 430 U.S. 651, 673, 97 S.Ct. 1401, 1413, 51 L.Ed.2d 711 (1977) ("Among the historic liberties [protected by the Due Process Clause is the] right to be free from ... unjustified intrusions on personal security."). In fact, one court, recognizing "the potential for permanent deprivation through long-term side-effects" from the use of certain antipsychotic medications, stated "that forced drugging can be as intrusive as the involuntary confinement resulting from commitment...." Rennie v. Klein, 476 F.Supp. 1294, 1307 (D.N.J. 1979), modified and remanded, 653 F.2d 836 (3d Cir.1981), vacated and remanded, 458 U.S. 1119, 102 S.Ct. 3506, 73 L.Ed.2d 1381 (1982), remanded, 720 F.2d 266 (3d Cir.1983) (Although the dictates of the court's holding evolved over time, the basic premise that forced medication implicates an important due process liberty interest remained intact.).
Orders of nonhospitalization impinge upon other liberty interests of mental health patients as well. Clearly, the stigma attached to mental illness, see In re W.H., 144 Vt. 595, 597, 481 A.2d 22, 24 (1984), and the fact of involuntary psychiatric treatment constitute deprivations of liberty requiring protection. Vitek v. Jones, 445 U.S. 480, 492, 100 S.Ct. 1254, 1263, 63 L.Ed.2d 552 (1980).
Only one case has been brought to our attention involving indeterminate orders of nonhospitalization analogous to the orders at issue here. See State ex rel. Watts v. Combined Community Services Board, 122 Wis.2d 65, 362 N.W.2d 104 (1985). Although the court specifically declined to address the petitioners' due process arguments, id. at 87, 362 N.W.2d at 114-15, by striking down the relevant statute on equal protection grounds, it implicitly recognized that commitment and involuntary placement orders implicated similar liberty interests and could not rationally be distinguished when considering procedural requirements of periodic review. Id. at 80-81, 362 N.W.2d at 111.
As we indicated earlier, the validity of the initial orders of nonhospitalization have not been disputed. The basis for petitioners' challenge lies in the fact that the orders are of indefinite duration. Clearly some mechanism must be provided to periodically review the status of persons subject to such orders to determine whether *1033 continued treatment is justified. The State contends that the statute providing for periodic review by way of patient-initiated applications for discharge satisfies this requirement of due process. See 18 V.S.A. § 7801. We disagree.
The patient-initiated review process "suffers from conceptual as well as serious practical deficiencies." Fasulo v. Arafeh, 173 Conn. 473, 480, 378 A.2d 553, 556 (1977). The state's power to subject persons to involuntary treatment orders is based on a legal determination that said persons are presently suffering from a mental illness which so affects their ability to function in society that they pose a danger to themselves or others, or will pose such a danger if their present course of treatment is discontinued. See 18 V.S.A. § 7101(16)-(17). If and when a person's mental condition changes so that he is no longer a person in need of further treatment, the state's power in the area ceases, and any further restraint on the individual's liberty interest is constitutionally and statutorily impermissible. See Fasulo, supra, 173 Conn. at 480 & n. 1, 378 A.2d at 556 & n. 1; see also O'Connor v. Donaldson, 422 U.S. 563, 575, 95 S.Ct. 2486, 2493-94, 45 L.Ed.2d 396 (1975) (involuntary commitment "founded upon a constitutionally adequate basis ... could not constitutionally continue after that basis no longer existed"); 18 V.S.A. § 7621(e) ("If the court finds that the patient is not a patient in need of further treatment, it shall order the patient discharged.").
The Vermont Constitution explicitly states that people are born free and enjoy freedom from restraint as a natural, inherent and unalienable right. Vt. Const. ch. I, art. 1. To place the burden on the patient to assert his right to liberty seems at odds with this fundamental constitutional principle. "It is the state, after all, which must ultimately justify depriving a person of a protected liberty interest by determining that good cause exists for the deprivation." Doe v. Gallinot, 657 F.2d 1017, 1023 (9th Cir.1981). Where that deprivation is to continue for an indefinite period, it is the State which should bear the burden of initiating the review process, and of establishing that there is a continuing need to strip the citizen of one of his most cherished rights. See Fasulo, supra, 173 Conn. at 480, 378 A.2d at 556 ("due process clause of the Connecticut constitution mandates that involuntarily confined civilly committed individuals be granted periodic judicial reviews of the propriety of their continued confinement"); State ex rel. Watts, supra, 122 Wis.2d at 83, 362 N.W.2d at 113 ("protectively placed individuals are entitled to the right of periodic, automatic judicial review that all other civilly committed persons in Wisconsin have"); cf. State v. Ballou, 125 N.H. 304, 312, 481 A.2d 260, 264 (1984) ("disadvantage is created by a procedure which shifts the burden of initiating judicial review of commitment status" to the patient).
The practical considerations that preclude this Court from holding that patient-initiated review procedures comport with due process are well documented:
The failure of patients to request a hearing may be attributable to their incompetence, their lack of knowledge of the relevant procedures, the effort necessary to utilize the procedures, the cost of pursuing review, the disorienting effects of drugs or other treatments, or institutional pressures to rely on staff judgments rather than to invoke legal remedies.
Note, Developments in the Law  Civil Commitment of the Mentally Ill, 87 Harv. L.Rev. 1190, 1398 (1974) (footnotes omitted), quoted in Johnson v. Solomon, 484 F.Supp. 278, 289 (D.Md.1979). Although many of these obstacles may be more substantial in a commitment, as opposed to a community placement setting, this Court cannot ignore the fact that of the twenty-eight cases reviewed by the State pursuant to its internal review procedures, fourteen resulted in discharge. Obviously, some persons entitled to discharge were not availing themselves of their statutory right to have their status reviewed. This fact *1034 underscores our primary concern: "Without some formal, automatic review procedure, the risk is too great that [persons will be involuntarily treated or confined] far longer than required or actually become lost in a slow-moving, self-perpetuating bureaucracy." Johnson, supra, 484 F.Supp. at 289. Accordingly, we hold that the patient-initiated review process contemplated by 18 V.S.A. § 7801 fails to satisfy the due process rights of persons subject to indeterminate involuntary treatment orders.
The State concedes that the administrative review procedures employed in this case do not meet the requirements of due process. We accept this concession, and therefore do not reach the question whether any administrative review process would pass constitutional muster under Mathews v. Eldridge, 424 U.S. 319, 334-35, 96 S.Ct. 893, 902-03, 47 L.Ed.2d 18 (1976) (court must identify private interest implicated, the risk of harm posed by an erroneous decision, "the probable value ... of additional or substitute procedural safeguards," and the governmental interest, including any financial or administrative burden presented by such alternatives). We note in closing, however, that fundamental privacy and liberty interests are at stake. As the risk of harm posed by an erroneous deprivation is great, the State would bear a heavy burden to show that periodic judicial reviews would be prohibitively burdensome, and that the proposed administrative review process adequately safeguards the rights of the mentally ill.
Affirmed.