865 A.2d 416 (2004)
2004 VT 111
In re E.T.
No. 03-536.
Supreme Court of Vermont.
October 29, 2004.
*418 Jean L. Murray, Vermont Legal Aid, Montpelier, for Appellant.
William H. Sorrell, Attorney General, and Bridget C. Asay, Assistant Attorney General, Montpelier, for Appellee.
Present: AMESTOY, C.J.,[1] DOOLEY, JOHNSON and REIBER, JJ., and ALLEN, C.J. (Ret.), Specially Assigned.
¶ 1. JOHNSON, J.
Appellant E.T. appeals the Chittenden Family Court's decision to renew his order of nonhospitalization (ONH). E.T. asserts that the court erred in failing to discharge him from court-ordered treatment when the evidence demonstrates that he is willing and able to continue treatment voluntarily. We affirm.
¶ 2. E.T. is a 63 year old man who suffers from paranoid schizophrenia. His mental illness was first diagnosed in 1965 after he allegedly shot and wounded a police officer. In 1974, E.T. killed his employer with an axe, but was found not guilty by reason of insanity. He was committed to the Vermont State Hospital, but was discharged in 1978 on the condition that he continue receiving bi-weekly injections of an anti-psychotic medication to control auditory hallucinations and paranoid delusions. On two occasions, once in 1983, and again in 1988, E.T. missed an injection and had to be briefly rehospitalized after displaying signs of psychosis. E.T. has consistently taken his medication since 1988, but was briefly hospitalized again in 1992 after making threats during an argument with his neighbor. Since then, he has taken his medication as ordered and has not required further hospitalization.
¶ 3. Upon release from the hospital in 1983, E.T. was placed under an ONH requiring him to continue taking his medication. The ONH was initially of indefinite duration, but in 1988 Vermont law was revised to require annual judicial review. See 18 V.S.A. § 7621 (limiting court-ordered periods of hospitalization or nonhospitalization to one year). For fifteen years, E.T. voluntarily agreed to annual renewal of his ONH without a court hearing. In 2003, however, he did not consent to renewal, and the Chittenden County Family Court held a hearing on the State's application for continued treatment.
¶ 4. At the hearing, the State contended that E.T. remained "patient in need of further treatment,"[2] that an ONH is the *419 east restrictive feasible means of treatment in his case, and that the court should therefore renew his ONH. E.T. did not argue that he is no longer mentally ill, that his treatment plan should be changed in any way, or that he no longer poses a threat to others if his treatment is discontinued. His sole contention was that an ONH is no longer necessary because his song record of compliance shows he is capable of pursuing treatment voluntarily.
¶ 5. It is undisputed that, under medication, E.T. is a pleasant person who maintains a stable, independent living situation, is helpful to his neighbors and friends, and is relatively unlikely to have further episodes of psychosis or violent behavior. Both parties agree, however, that E.T. is likely to show signs of psychosis if he discontinues treatment, and that swift intervention would be important to minimize the chance of serious deterioration in E.T.'s long-term mental stability.
¶ 6. In its Opinion and Order, the family court found that the State produced clear and convincing evidence that E.T. was a "patient in need of further treatment," and that because of his history of discontinuing treatment and becoming violent, voluntary treatment was not feasible. The court then issued a one-year ONH requiring E.T. to take his medication, meet regularly with his treatment providers, and refrain from violent behavior. This appeal followed.
¶ 7. We begin by observing that, contrary to the State's contentions, the family court did not err in considering the feasibility of voluntary treatment in E.T.'s case. The State argues that to put voluntary treatment in issue a patient should be required to affirmatively consult with his or her treatment providers before initiating judicial proceedings. To meet constitutional requirements, the review process for orders of nonhospitalization must be consistent with the Vermont Constitution's presumption that freedom from restraint is a fundamental, inalienable right. See In re G.K., 147 Vt. 174, 179, 514 A.2d 1031, 1034 (1986) (holding that indefinite orders of nonhospitalization without a provision for regular judicial review are unconstitutional on due process grounds). Moreover, the review process must address systemic pressures a patient might face to avoid contradicting the recommendations of his or her treatment provider. Id. at 178, 514 A.2d at 1033. Although "the State's burden to show that voluntary treatment is not feasible arises only after the proposed patient raises that issue," In re R.L., 163 Vt. 168, 174, 657 A.2d 180, 184 (1995), the additional barriers to consideration of voluntary treatment the State proposes implicate the same due process concerns addressed in G.K. Accordingly, we conclude that E.T.'s request, made through counsel in response to an application for continued treatment, was sufficient to put voluntary treatment in issue.
¶ 8. E.T. does not contest the family court's finding that he is a "patient in need of further treatment" with a history of discontinuing treatment and exhibiting violent behavior. Rather, he contends that: (1) the court erred as a matter of law by considering factors other than those identified in R.L. in making its feasibility finding; (2) when confined to those factors, the State's evidence was insufficient to demonstrate that voluntary treatment is not feasible *420 in his case; and (3) because he cannot undo his past acts of violence, the court's reliance on that history has the unconstitutional effect of permanently denying his request for voluntary status. We address each of these contentions in turn.
¶ 9. First, E.T. contends that the court erred as a matter of law by departing from the R.L. factors in making its feasibility determination. In R.L., a case involving involuntary hospitalization, we held that "[a]mong the factors the court may consider [in determining whether voluntary treatment is feasible] are the patient's capacity to consent to voluntary treatment, the impact voluntary treatment may have on the patient's treatment plan, and whether the patient would, in fact, accept voluntary treatment." R.L., 163 Vt. at 174, 657 A.2d at 184-85. E.T. contends that the family court erred by going beyond R.L. and basing its order on the fact that he has discontinued treatment in the past, and the fact that he may quickly decompensate and become violent if he stops taking his medication in the future. In essence, he asks us to hold that, as a matter of law, the family court must strictly limit its factual determinations regarding feasibility to the R.L. factors, even when evaluating a nonhospitalized patient who presents public safety concerns not at issue in that case. We decline to do so.
¶ 10. We have not stated our intention to make the R.L. factors exclusive. In fact, we presented those factors as "among" those a court "may" consider in determining whether voluntary treatment is feasible. Id. at 174, 657 A.2d at 184. Individual cases, particularly those involving nonhospitalized patients, may present other factors that the family court must consider in evaluating the feasibility of voluntary treatment. The core of the holding in R.L. is simply that, once a patient raises the issue, some consideration of voluntary treatment is necessary before an order for involuntary treatment can issue.
¶ 11. Moreover, we have recognized that the feasibility of voluntary treatment involves additional considerations when the patient is no longer in the hospital. See In re K.M., 165 Vt. 569, 570, 678 A.2d 1263, 1265 (1996) (mem.) (granting hospitalized patient conditional voluntary status in part because State could seek involuntary commitment if he indicated his intent to leave the hospital). In the case of a nonhospitalized patient without an operative ONH, the State is not able to directly monitor a voluntary treatment program, and may not be able to intervene quickly enough should the patient choose to stop treatment. In this context, the danger a patient poses to the community if treatment is discontinued is of great practical importance, and thus an appropriate factor for courts to consider in evaluating the feasibility of voluntary status. We therefore conclude that the family court did not err in considering the danger to the public should E.T. discontinue treatment when it decided to renew the ONH.
¶ 12. Second, E.T. contends that the State's evidence, when confined to the R.L. factors, does not support the court's finding that voluntary treatment is not feasible in his case. Because we have already determined that the family court need not limit its inquiry to the R.L. factors, we instead review the court's findings based on all the evidence presented at the hearing. In judicial proceedings where involuntary mental health treatment is at issue, the State has "the burden of proving its case by clear and convincing evidence." 18 V.S.A. § 7616(b). Once a patient raises the issue of voluntary treatment, the State must show "clear and convincing evidence that voluntary treatment is not feasible" before an order for involuntary treatment can issue. R.L., 163 Vt. at 174, 657 A.2d at *421 184. Clear and convincing evidence is a "very demanding" standard, requiring somewhat less than evidence beyond a reasonable doubt, but more than a preponderance of the evidence. In re N.H., 168 Vt. 508, 512, 724 A.2d 467, 469-70 (1998). The clear and convincing evidence standard does not require that evidence in support of a fact be uncontradicted, but does require that the fact's existence be "highly probable." Id. at 512, 724 A.2d at 470 (quotation omitted).[3]
¶ 13. Despite the heightened burden of proof the State bears at trial, the standard of review in this context remains deferential: "The test on review is not whether this Court is persuaded that there was clear and convincing evidence, but whether the factfinder could reasonably have concluded that the required factual predicate was highly probable." Id. at 512-13, 724 A.2d at 470. Only where the record indicates that the trial court "clearly erred" in finding clear and convincing evidence will this Court reverse such a finding. Id. at 514, 724 A.2d at 471. See also Gavala v. Claassen, 2003 VT 16, ¶ 5, 175 Vt. 487, 819 A.2d 760 (mem.) (reviewing findings of fact for clear error where standard of proof was clear and convincing evidence); In re B.W., 162 Vt. 287, 291, 648 A.2d 652, 654 (1994) (applying "clearly erroneous" standard of review to trial court finding that clear and convincing evidence supported termination of custody rights).
¶ 14. Here, neither party disputes E.T.'s history of violence or his past failures to take medication and subsequent rehospitilization. Moreover, the experts for both parties agreed that E.T. is likely to destabilize quickly, and possibly become violent, if he discontinues treatment. While it is also undisputed that E.T. has taken his medication willingly and without fail for over fifteen years, the court must still evaluate the public danger he would present should he choose to discontinue treatment without an operative ONH. Given the evidence presented, we cannot conclude that the court clearly erred in finding that voluntary treatment was not feasible in E.T.'s case.
¶ 15. Third, E.T. challenges the family court's consideration of E.T.'s history of violence on due process grounds, contending that it will lead to automatic renewal of his ONH because he can never undo his past acts of violence. It is not just E.T.'s history that guided the court here, however, but rather the combination of that history and the present likelihood that he will rapidly deteriorate and become violent if he stops taking his medication. In the case of a patient who is receiving adequate treatment, but remains "in need of further treatment," the court must look to the effect of discontinuing treatment to evaluate the danger he may pose to the public. In re P.S., 167 Vt. 63, 69, 702 A.2d 98, 102 (1997). If E.T. could demonstrate *422 that he is no longer dangerous, even when he fails to take his medication, then it would be improper for the court to renew the ONH based solely on his remote history of violence. That is not the circumstance here, however. Rather, the court found that if E.T. were to discontinue treatment, as he has on several occasions, the likelihood of rapid decompensation and resultant public danger is high. We therefore conclude that the court did not violate E.T.'s due process rights by renewing the ONH.
¶ 16. As E.T. has not demonstrated that the family court misapplied the law or clearly erred in finding that voluntary treatment was not feasible in his case, we affirm the decision to renew the ONH.
Affirmed.
NOTES
[1] Chief Justice Amestoy sat for oral argument but did not participate in this decision.
[2] Vermont law defines a "patient in need of further treatment" as "[a] patient who is receiving adequate treatment, and who, if such treatment is discontinued, presents a substantial probability that in the near future his condition will deteriorate and he will become a person in need of treatment." 18 V.S.A. § 7101(16)(B). A "person in need of treatment," in turn, is "a person who is suffering from mental illness and, as a result of that mental illness, his capacity to exercise self-control, judgment or discretion in the conduct of his affairs and social relations is so lessened that he poses a danger of harm to himself or others." 18 V.S.A. § 7101(17).
[3] The State requests that we alter the burden of proof requiring the State to show clear and convincing evidence that voluntary treatment is not feasible before we will renew an ONH. The burden of proof is high in this context for several reasons. The Legislature has made clear its intent to avoid involuntary treatment whenever possible, 18 V.S.A. § 7703(a), and the clear and convincing evidence standard is specifically mandated in mental health proceedings, 18 V.S.A. § 7616(b). Moreover, court-ordered mental health treatment of any kind is a serious invasion of fundamental liberty interests, further justifying a stringent burden of proof. See, e.g., In re G.K., 147 Vt. 174, 176-77, 514 A.2d 1031, 1032 (1986) (recognizing that the "fundamental nature" of the rights affected by mental health treatment is "beyond dispute"). Additionally, the State cites no authority that would support a relaxed standard of proof here. Therefore, the family court was correct in applying the clear and convincing evidence standard.