VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.      23-AP-185



SUPREME COURT DOCKET NO. 23-AP-185

JUNE TERM 2023

| | | |
|---|---|---|
| State of Vermont | } | APPEALED FROM: |
| | } | |
| v. | } | Superior Court, Franklin Unit |
| | } | Criminal Division |
| | } | |
| Jason Combs | } | DOCKET NO. 23-CR-04586 |
| | } | |
| | | Trial Judge: Elizabeth Novotny |

In the above-entitled cause, the Clerk will enter:

Defendant Jason Combs appeals from a superior court order holding him without bail pending trial, pursuant to 13 V.S.A. § 7553a. He contends that his involuntary-manslaughter charge does not contain an element involving an act of violence against another, that the State cannot otherwise meet its burden to hold him without bail under § 7553a, and that the Court should exercise its discretion to release him on conditions prior to trial. The order holding defendant without bail under § 7553a is affirmed.

Under Chapter II, § 40(2) of the Vermont Constitution and 13 V.S.A. § 7553a, a person charged with a felony offense involving an act of violence against another may be held without bail if the evidence of guilt is great and the court finds that release would pose a substantial threat of physical violence to another that cannot be reasonably prevented by setting conditions of release. If a defendant is held without bail based on such a determination, the defendant is entitled to de novo review by a single Justice of the Supreme Court with no deference to the trial court's rulings. Vt. Const. ch. II, § 40(2); 13 V.S.A. § 7556(d).

On May 12, 2023, the State charged defendant with one count of driving under the influence (DUI) #4 (over the legal limit), one count of DUI #4 (under the influence), one count of gross negligent operation with a fatality resulting, one count of eluding a law enforcement officer with a fatality resulting, and one count of manslaughter.

The State moved to hold defendant without bail under § 7553a on the manslaughter charge. The trial court held a hearing on the State's motion and determined to hold defendant without bail.[1] Defendant then requested a new evidentiary hearing before this Court.

---

[1] Under such circumstances, the Vermont Constitution ch. II, § 40(2) and 13 V.S.A. § 7553a also require that defendant's case proceed to trial within sixty days, absent agreement to

## I. Evidence at Hearing

The Court held a de novo evidentiary hearing on June 28, 2023. The parties stipulated to the admission of portions of the transcript from the initial hold-without-bail hearing, which was held in May. 13 V.S.A. § 7556(d). Specifically, the parties agreed to admit a significant portion of the testimony of Vermont State Police Trooper Andrew Underwood. They also agreed to the admission of the testimony of Vermont State Police Trooper Robert Van Woert, along with the exhibits that were admitted during the testimony of both officers.[2] In addition, defendant's mother, Lisa Hall, and his wife, Jennifer Combs, testified at the hearing. The Court makes the following findings from that evidence.

The facts necessary for the purposes of this hearing are not expansive. On May 11, 2023, defendant was operating his truck on a public road. Trooper Andrew Underwood noticed that defendant's truck did not have a front license plate and a rear taillight was not operating. Those are both motor vehicle violations. Trooper Underwood activated his cruiser's blue lights in an attempt to have defendant stop his truck. Instead of stopping, defendant turned onto another road, pulled into the oncoming lane of traffic, and sped away. The truck kicked up significant dust and rocks as it did so. Trooper Underwood activated his siren and pursued. Defendant continued to accelerate quickly, driving over sixty miles-per-hour in a forty-miles-per-hour zone. Trooper Underwood ceased the pursuit due to his fear of increasing the danger to the public through a high-speed chase. Defendant proceeded to elude the officer and went around a corner. He passed into the oncoming lane of travel and forcefully collided with a motorcycle being driven by Mr. Christopher Ryea, which created a visible fireball.

After the collision, defendant's truck came to rest just off the roadway. He exited the vehicle and looked over the front of the vehicle towards where Mr. Ryea was on the ground. Defendant did not render aid or stay at the scene. As Trooper Underwood got out of his cruiser, defendant attempted to flee across an adjacent field. Trooper Underwood pursued defendant and apprehended him without resistance.

Trooper Underwood noted that defendant had an odor of alcohol and placed him in his cruiser. Trooper Underwood gave emergency aid to Mr. Ryea and administered CPR. The trooper was unable to revive him, however. Tragically, Mr. Ryea died as a result of the collision with defendant's truck.

Defendant was aware that he was driving without a front plate, as Trooper Underwood discovered it in the front compartment of the truck.

---

a greater period of time by defendant. In this case, the Court believes this matter has been set for trial in early July.

[2] The defense noted two evidentiary objections to certain parts of the evidence submitted. As those portions do not impact the Court's ultimate determinations, the Court will not consider those contested aspects of the record in its analysis.

Trooper Van Woert arrived at the scene later as defendant was being evaluated by emergency medical personnel. Trooper Van Woert noticed that defendant swayed while he was with them, appeared confused, and had slurred speech. The trooper suspected that defendant was under the influence of alcohol. Trooper Van Woert had defendant perform three field-sobriety tests. Defendant did poorly on all of them, displaying multiple clues of inebriation on each test. He also lost his balance a number of times during the tests. Defendant refused to provide a preliminary breath test. Trooper Van Woert took defendant into custody and transported him to the state police barracks. At 10:50 p.m., Trooper Van Woert administered an evidentiary breath test to defendant. At that point, his blood-alcohol content was .121.[3] That number was confirmed by a second test. The crash had occurred at roughly 8:30 p.m. The State submitted no evidence relating the test result to the time of operation; however, defendant was in custody and consumed no alcohol during that interim period. The evidence from the erratic operation and the observations of the troopers establishes that defendant was significantly impaired by alcohol at the time of the incident.

At hearing, defendant proffered his wife and his mother as potential responsible adults under 13 V.S.A. § 7554(a)(2)(A). Ms. Combs has dated defendant since they were teenagers. They were married in 2001. She lives with her son, his girlfriend, and their infant son. Ms. Combs is willing to have defendant return to their marital home. Ms. Combs works three twelve-hour shifts in Burlington each week. She agreed to be defendant's custodian to ensure that he would not have access to cars or car keys, that he would not have access to alcohol, that no alcohol would be in the home, and that she would call law enforcement if defendant violated any conditions of release set by the Court. She acknowledged, however, that she would be asleep during portions of the time that she would be supervising defendant, that she has been with defendant through all of his prior DUI convictions, that she had tried to get him to stop drinking and driving, and that defendant had effectively kept his ongoing alcohol use from her. No evidence suggests that defendant has engaged in alcohol treatment since the events at issue. Defendant has stopped consuming alcohol and relapsed into drinking again in the past.

Ms. Combs also agreed that she and defendant both had prior convictions for driving with suspended licenses and had engaged in that conduct knowingly, that defendant had been convicted of driving under the DUI three times in the past, and that he also had a prior conviction for attempting to elude law enforcement. Ms. Combs conceded that defendant remained a part of the Department of Motor Vehicles' interlock-ignition program, which precludes operation of a motor vehicle unless the person blows into a device showing that the person has not consumed alcohol. 23 V.S.A. § 1213. She noted, however, that the Department of Motor Vehicles told them at one point that defendant was eligible to receive a license without the interlock requirement. Defendant's interlock device was on a disabled vehicle on the date of this incident. Ms. Combs was aware that defendant's truck, which he used for work purposes, had no interlock device.

Ms. Hall agreed to be a responsible adult for defendant during the times when Ms. Combs was at work. She proposed that defendant would stay with her and her husband at their home in Enosberg Falls during those periods. Ms. Hall similarly agreed to ensure that defendant had no access to cars or car keys; that she would ensure that there was no alcohol on the premises; and

---

[3] Vermont law prohibits operation of a motor vehicle with a blood-alcohol of .08 or greater. 23 V.S.A. § 1201(a)(1).

that, while her husband drinks at the property, he was "on board" with not having alcohol at the property if defendant was there. She acknowledged that defendant had a longtime problem with alcohol, that he has had multiple DUIs, that she had not been able to get him to stop drinking despite those convictions, and that she has seen him drinking episodically over the past few years. Though defendant is an experienced automotive mechanic, Ms. Hall did not think he could start a car without a key.

## II. Analysis

The State has asked the Court to hold defendant without bail under 13 V.S.A. § 7553a based on the charge of involuntary manslaughter. The request involves a multi-step analysis. First, the charge lodged against the defendant must be "a felony, an element of which involves an act of violence against another person," as that phrase is used in § 7553a and the identical constitutional provision on which it is based, Vermont Constitution. ch. II, § 40(2). Second, the evidence of guilt as to that offense must be "great." Third, the State must establish both that: (a) "the person's release poses a substantial threat of physical violence to any person," and (b) "no condition or combination of conditions of release will reasonably prevent the physical violence." 13 V.S.A. § 7553a. Finally, despite those findings, a court must consider whether to exercise discretion to release the defendant in light of the factors in 13 V.S.A. § 7554 or other considerations. State v. White, 2020 VT 62, ¶ 10, 212 Vt. 658 (mem.) (courts have "narrow" discretion under such circumstances); State v. Sanborn, No. 2020-316, 2021 WL 75228, *6 (Vt. Jan. 4, 2021) (unpub. mem.), https://www.vermontjudiciary.org/sites/default/files/documents/20-316.pdf [https://perma.cc/WX98-D5ZK].

The Court will address each step in turn.

## A. Felony Involving an Act of Violence

There is no dispute that manslaughter, 13 V.S.A. § 2304, is a felony. Defendant argues, however, that it does not include an element involving an act of violence against another for purposes of § 7553a. The question appears to be one of first impression for the Court, and it is not insubstantial. Defendant argues that, under Borden v. United States, 141 S. Ct. 1817 (2021), the focus of the inquiry should be on the mental state required for a conviction. He asserts that the mental state required for manslaughter is insufficient to show that the defendant intended to direct a violent act at a specific person, and, therefore, there is no act of violence cognizable under § 7553a. The Court disagrees.

When determining whether a felony has an element involving "an act of violence against another person," 13 V.S.A. § 7553a, the Court looks to the "statutory components of the felony charged, and not the evidence that will be offered to prove the felony." State v. Filippo, 172 Vt. 551, 552 (2001) (mem.). Because "violence" is not defined in the statutory scheme, we apply the plain meaning, "which may be obtained by resorting to dictionary definitions." State v. Gauthier, 2020 VT 66, ¶ 7, 213 Vt. 82 (quotation omitted); see, e.g., State v. Madison, 163 Vt. 390, 395 (1995) (applying dictionary definition of violence under § 7553a and suggesting that it can include "abusive or unjust use of power" (quotation omitted)).

"Violence" is variously defined as "physical force so as to injure," "an instance of violent treatment," and "destructive action or force." Violence, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/violence [https://perma.cc/QM4L-4NW4].

4

Nothing intrinsic about the concept of violence necessitates any specific mental state of the actor who propagates the violence. Nor does the greater statutory expression "involves an act of violence against another person." "Involves" means "to relate closely." Involve, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/involve [https://perma.cc/NE7E-9JJ5]. "Against" means "in the direction of and into contact with." Against, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/against. The question is simply whether manslaughter has an element that relates closely to an injurious or destructive act towards another.

"Manslaughter is the unlawful killing of another." State v. Congress, 2014 VT 129, ¶ 21, 198 Vt. 241 (quotation omitted). The elements of involuntary manslaughter require the State to prove: defendant's conduct caused the death of another, the killing was unlawful, and defendant acted, at least, in a criminally negligent manner. See State v. Robitille, 2019 VT 36, ¶ 35, 210 Vt. 202; State v. Viens, 2009 VT 64, ¶ 20 n.4, 186 Vt. 138 (discussing case law holding that killing must be "unlawful," i.e., "without legal excuse or legal justification"). In the Court's view, involuntary manslaughter plainly contemplates a destructive or injurious conduct by a defendant that causes the death of another human being. Applying the plain meaning of the statutory language, involuntary manslaughter falls within the ambit of § 7553a.

Further, even if the Court were to engraft consideration of intent into the crime-of-violence analysis, defendant's position would fare no better. Our law requires that the State prove, at a minimum, that a defendant charged with involuntary manslaughter disregarded a risk of causing another person's death to such a degree that his failure to perceive it involved a gross deviation from the standard of care that a law-abiding person would have exercised in a similar situation. See Robitille, 2019 VT 36, ¶ 35; State v. Shabazz, 169 Vt. 448, 451-52 (1999). This standard elevates the alleged conduct at issue well above civil negligence and mere accident. It creates a floor of criminal liability that, though not requiring a specific intent to kill, does require the State to establish that the defendant disregarded the risk that his conduct could cause the death of another and that his disregard of that risk was far more extreme and blatant than would have been acceptable to any reasonable person.

In sum, to be guilty of involuntary manslaughter, a defendant must have directly caused the death of another person, the killing must have been unlawful, and his conduct must show exceedingly high disregard for the fact that his actions posed a risk of death to another. The required intent is, thus, directly linked to the risk of causing someone's death. In the Court's view, those elements suffice to establish a crime of violence for purposes of § 7553a, even if consideration of intent were part of the equation.

Defendant's citation of Borden v. United States does not persuade the Court otherwise. The question in Borden was whether the statutory expression "violent felony" under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), encompasses a predicate felony requiring no higher than a recklessness mental state. 141 S. Ct. at 1821. The ACCA specifically defines "violent felony" to mean "the use, attempted use, or threatened use of physical force against the person of another." Id. at 1822. The Court found recklessness insufficient in the statutory scheme because "[t]he phrase 'against another,' when modifying the 'use of force,' demands that the perpetrator direct his action at, or target, another individual. Reckless conduct is not aimed in that prescribed manner." Id. at 1825. Moreover, this interpretation is closely informed by the intent of the ACCA, which is to address the danger posed by the habitual offender who is "the kind of person who,

when armed, might deliberately point the gun and pull the trigger." Id. at 1822 (quotation omitted). Accordingly, the high court's rejection of a recklessness standard was specifically linked to the likelihood that the underlying crime would reflect on the propensity to use firearms intentionally.

Borden addressed a statutory scheme with a different purpose and different language than that of § 7553a. Defendant's attempt to stretch its holding to support the more generic view that any reference to a crime of violence must necessarily contain a specific intent requirement is not convincing.

## B.  Evidence of Guilt is "Great"

While the language of § 7553a speaks in terms of the weight of the evidence being "great," case law makes clear that the actual standard to apply is the same as that used to evaluate a motion to dismiss under Vermont Rule of Criminal Procedure 12(d). State v. Duff, 151 Vt. 433, 440 (1989). Under that rule, the prosecution must establish "by affidavits, depositions, sworn oral testimony, or other admissible evidence that it has substantial, admissible evidence as to the elements of the offense . . . sufficient to prevent the grant of a motion for judgment of acquittal at the trial." V.R.Cr.P. 12(d)(2); see State v. Turnbaugh, 174 Vt. 532, 532 (2002) (mem.). The ultimate question is whether the evidence submitted, "taken in the light most favorable to the State and excluding modifying evidence, can fairly and reasonably show defendant guilty beyond a reasonable doubt." Turnbaugh, 174 Vt. at 532 (quotation omitted).

In this case, the defense conceded at hearing that the evidence of defendant's guilt at this preliminary stage and under that standard is "great."

## C.  Clear and Convincing Evidence of Danger to Others and Inability of Conditions of Release to Control

Portions of the analysis under § 7553a require the State to make certain showings by "clear and convincing evidence." This is an exacting standard. As the Court has noted, it requires:

> "somewhat less than evidence beyond a reasonable doubt, but more than a preponderance of the evidence." In re E.T., 2004 VT 111, ¶ 12, 177 Vt. 405, 865 A.2d 416 (quotation omitted). The clear and convincing standard "does not require that evidence in support of a fact be uncontradicted, but does require that the fact's existence be highly probable." In re Kane, 2017 VT 48, 204 Vt. 635, 637, 169 A.3d 180, 183 (mem.) (quotation omitted).

Lanfear v. Ruggerio, 2020 VT 84, ¶ 18, 213 Vt. 322; see State v. Lontine, 2016 VT 26, ¶¶ 46-47, 201 Vt. 637, overruled on other grounds by State v. Downing, 2020 VT 101, ¶ 22, 213 Vt. 468.

The Court evaluates the evidence under that standard.[4]

---

[4]  Given the deprivation of liberty implicated by holding a person prior to trial, State v. Hance, 2006 VT 97, ¶ 17, 180 Vt. 357, and the citations noted below, the Court indicated at hearing that it believed this portion of the § 7553a analysis required the State present its evidence in accordance with the Vermont Rules of Evidence. See V.R.E. 1101 (listing proceedings to which

### 1. Clear and Convincing Evidence of Danger to Others

The State has established by clear and convincing evidence that defendant poses a significant danger to the public if he were released. See State v. Woodcock, 168 Vt. 588, 590 (1998) (holding that court can consider "general danger" to others in addition to danger to specific individual). In this case, defendant is charged with DUI for the fourth time. Despite his knowledge of the law and increasing past punishments, he has been convicted of DUI three times in the past. His wife acknowledged that he also has prior convictions for driving without a license and knowingly engaged in that conduct. On the night in question, he was operating a vehicle that was not equipped with the ignition interlock device. Ms. Combs stated that defendant had and continues to have a problem with alcohol. He has stopped drinking in the past and has been unable or unwilling to continue his sobriety. No evidence suggests that defendant has engaged in alcohol treatment following this incident, and he has been detained in jail since that event.

In addition to showing a potential danger to those who may be using the roadways if such conduct were to be repeated again, that history establishes defendant's willingness to disregard laws meant to protect the travelling public.

The instant charges lend far greater weight to those concerns. Defendant chose to drive while significantly impaired and in a vehicle not equipped with an ignition interlock device. When Trooper Underwood attempted to stop his vehicle for a minor motor vehicle violation, defendant chose to flee. He accelerated to over sixty miles-per-hour in a forty-miles-per-hour zone and travelled into the oncoming lane of travel. That conduct reflected no concern for the safety of the officer or for others on or adjacent to the roadway. The hazardous driving resulted in the death of Mr. Ryea.

Even after colliding with Mr. Ryea, defendant did not stop to check Mr. Ryea's condition or to render aid to the severely injured man. Instead, he continued his attempt to flee on foot.

Defendant's wife acknowledged at hearing that defendant has an earlier conviction for attempting to elude law enforcement as well.

Based on those facts, the Court finds that the State has established by clear and convincing evidence that defendant, if released, poses a stark threat to other members of the public who may be using or nearby to public roadways.

### 2. Clear and Convincing Evidence that Conditions Will Not Be Effective

Though a closer call, the Court finds that the State also has established by clear and convincing evidence that no conditions can be fashioned to address the dangers noted above.

The risk presented by defendant to the public is significant. The Court is convinced that the risk cannot be alleviated by the conditions proposed by defendant or any other conditions

---

Rules of Evidence do not apply); 13 V.S.A. § 7554(g) (stating that, for purposes of § 7554 only, evidence need not be admissible under Rules of Evidence). The State did not object to that approach. Accordingly, the Court proceeds on that basis for purposes of this case.

available under § 7554.  The Court appreciates the willingness of the proposed responsible adults to be custodians, and it takes them at their word that they would take the steps noted and would call law enforcement if defendant violated any protective conditions set by the Court.[5]  No responsible adult can provide full supervisory oversight and protection, however.  Responsible adults must sleep.  Defendants can place themselves out of their supervisors' direct view for periods of time.  Defendants can deceive responsible adults, despite their custodians' good faith efforts to be vigilant.  In fact, Ms. Combs conceded that she had not been aware of defendant's recent recurrences of drinking and that he had effectively concealed that from her, although they lived in the same home.  The same might occur in this instance.

Additionally, even if the responsible adults were to call law enforcement if defendant drank and/or eloped with a vehicle, there could be a delay between when the event occurs and when it is noticed by the custodian.  Another delay would extend from when the violation is reported to the point where law enforcement could apprehend defendant.  Those periods of time present dangers to the public.  Moreover, given his past conviction for attempting to elude and the eluding that has been established as to this event, there is a high probability that defendant would not stop for law enforcement willingly and would, again, attempt to avoid capture.  The perils presented by that scenario are palpable.

Ultimately, it falls to defendant to comply with conditions of release.  The Court is not confident that, even with the responsible adults, defendant would choose or be able to follow conditions of release and would not find a way to access alcohol and/or a vehicle.  As the Court has noted in considering responsible adults in the past:

> Even assuming the monastic residence can provide supervision twenty-four hours a day, seven days a week, as proffered by defendant, it is not guaranteed and is entirely dependent on defendant's voluntary compliance.  Mother's credible commitment to call police in the event of defendant drinking or absconding is still no prophylactic to defendant's demonstrated dangerousness.  Mother's custody of defendant would be unsecured.  Alcohol is ubiquitous and available almost at will.  Defendant cannot be relied upon to abide by no-alcohol conditions of release and does not obey court orders.  Short of actual custody without access to alcohol, the real risk of defendant drinking and resorting to life-threatening violence cannot, as a practical matter, be reasonably controlled.

State v. Steuerwald, 2012 VT 98, ¶ 16, 193 Vt. 663 (mem.).  Just so here.

The Court concludes that the State has established that the proposal to release defendant to the two responsible adults will not sufficiently diminish the harms identified above; and defendant, if released, would remain an ongoing danger to the public.

---

[5]  The Court notes, however, that Ms. Combs has condoned or acquiesced in defendant's past instances of driving without a license and his use of a vehicle without an interlock device.

## D. Discretionary Release

Having determined by clear and convincing evidence that the defendant poses a risk to others that cannot be ameliorated by conditions of release, "there is a manifest need for incarceration . . . . In other words, once the elements of § 7553a are satisfied, there is no safe basis to release the defendant . . . ." State v. Lohr, 2020 VT 41, ¶ 14, 212 Vt. 289. Nonetheless, the Court retains some discretion to release defendant in light of the factors set out in § 7554 or others raised by defendant. White, 2020 VT 62, ¶ 10. Given the imperative pronounced in Lohr, while such discretion exists, its scope is "narrow." Id.

In this case, defendant has not proffered any particular considerations under § 7554 or otherwise that might warrant defendant's release as a matter of the Court's discretion. Nothing on this record persuades the Court that this is the rare case where the Court should exercise its narrow discretion to release a defendant despite the hold-without-bail findings made under § 7553a.

The order holding defendant without bail under 13 V.S.A. § 7553a is affirmed.

FOR THE COURT:

_____

Timothy B. Tomasi, Superior Judge,
Specially Assigned